[No. S067491. Aug. 23, 2004.]

In re RONALD HAROLD SEATON on Habeas Corpus.

## COUNSEL

Steinhart & Falconer, Piper Rudnick, James T. Fousekis, Roger R. Myers, Dorothy A. Streutker, Joshua K. Koltun and Lisa M. Sitkin for Petitioner.

Bill Lockyer, Attorney General, David P. Druliner, Robert R. Anderson, Chief Assistant Attorneys General, Gary W. Schons, Assistant Attorney General, William M. Wood, Laura Whitcomb Halgren, Adrianne S. Denault, Holly D. Wilkens and Matthew Mulford, Deputy Attorneys General, for Respondent.

## OPINION

**KENNARD, J.**—Petitioner Ronald Harold Seaton was sentenced to death after his conviction of murder (Pen. Code, § 187)[1] with burglary-murder and robbery-murder special circumstances (§ 190.2, subd. (a)(17)(A) & (G)). On his automatic appeal, we affirmed the judgment. (*People v. Seaton* (2001) 26 Cal.4th 598 [110 Cal.Rptr.2d 441, 28 P.3d 175].)

The petition for writ of habeas corpus challenges his capital murder conviction on numerous grounds. Four of those pertain to matters that petitioner could not have raised *on appeal* because of his failure to raise them in the trial court by a pretrial motion.[2] We issued an order to show cause to determine whether this failure also precludes consideration of those issues in a postconviction *habeas corpus* proceeding. We conclude it does, unless the

---

[1] Unless otherwise stated, all further statutory references are to the Penal Code.

[2] The remaining claims in the petition for habeas corpus were not included in our order to show cause. We will dispose of those claims in a separate order to be filed upon the finality of this opinion.

claim depends substantially upon facts that the petitioner did not know, and could not reasonably have known, at the time of trial.

# I

On January 25, 1998, petitioner filed this habeas corpus petition.

In claim II.A., petitioner contends that his murder conviction, the jury's special circumstance findings, and his sentence of death should be vacated because the prosecutor's decision to seek the death penalty was motivated by petitioner's "race [African-American], and/or the publicity attending this case, and/or the lack of guidelines for such matters in the prosecutor's office, and/or the arbitrary practices of the prosecutors involved in making all decisions regarding Petitioner's case."

In claim II.B., petitioner asserts that his death sentence should be vacated because the prosecutor's decision to seek the death penalty was improperly based on the prosecutor's inaccurate belief that petitioner had a prior conviction in Michigan for a crime described as "Assault Less than Murder."

In claim II.C., petitioner argues that his death sentence should be vacated because the prosecutor's decision to seek the death penalty against him was improperly based on financial and political considerations.

In claim V.A., petitioner contends that his murder conviction, the special circumstance findings, and his death sentence should be vacated because Riverside County deliberately manipulated the racial composition of its panels of prospective jurors, resulting in a substantial underrepresentation of African-Americans and Hispanics in the panel assigned to his case.

Petitioner alleges that the conduct underlying those claims violated "the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Article I, sections 1, 7, 9, 12, 13, 14, 15, 16, 17, 24, 27, 28, and 30 of the California Constitution, as well as the statutory and decisional law of the State of California and rights under Penal Code section 1473."

Petitioner did not raise any of these four claims at trial. The Attorney General argues that his failure to do so now bars him from raising them in this habeas corpus proceeding.

# II

Penal Code section 1259 provides: "Upon an appeal taken by the defendant, the appellate court may . . . review any question of law involved in any

ruling, order, instruction, or thing whatsoever said or done at the trial or prior to or after judgment, which thing was said or done *after objection made in and considered by the lower court*, and which affected the substantial rights of the defendant." (Italics added.) Thus, as a general rule, "the failure to object to errors committed at trial relieves the reviewing court of the obligation to consider those errors on appeal." (Fischer et al., Appeals and Writs in Criminal Cases (2d ed. 2000) § 1D.26, pp. 182–183; see also 4 Cal.Jur.3d (1998) Appellate Review, § 175, pp. 233–234.) This applies to claims based on statutory violations, as well as claims based on violations of fundamental constitutional rights. (*People v. Barnum* (2003) 29 Cal.4th 1210, 1224, fn. 2 [131 Cal.Rptr.2d 499, 64 P.3d 788]; *People v. Saunders* (1993) 5 Cal.4th 580, 590 [20 Cal.Rptr.2d 638, 853 P.2d 1093]; see also *Peretz v. United States* (1991) 501 U.S. 923, 936–937 [115 L.Ed.2d 808, 111 S.Ct. 2661].)

The reasons for the rule are these: " 'In the hurry of the trial many things may be, and are, overlooked which would readily have been rectified had attention been called to them. The law casts upon the party the duty of looking after his legal rights and of calling the judge's attention to any infringement of them. If any other rule were to obtain, the party would in most cases be careful to be silent as to his objections until it would be too late to obviate them, and the result would be that few judgments would stand the test of an appeal.' " (*Sommer v. Martin* (1921) 55 Cal.App. 603, 610 [204 P. 33], quoted with approval in *People v. Saunders, supra,* 5 Cal.4th at p. 590.)

To consider on appeal a defendant's claims of error that were not objected to at trial "would deprive the People of the opportunity to cure the defect at trial and would 'permit the defendant to gamble on an acquittal at his trial secure in the knowledge that a conviction would be reversed on appeal.' " (*People v. Rogers* (1978) 21 Cal.3d 542, 548 [146 Cal.Rptr. 732, 579 P.2d 1048].) There are various reasons why a criminal defendant might choose not to object at trial to a perceived error. The defendant may believe that the error has not actually caused any harm. This example comes to mind: At trial, the defense realizes that the venire of prospective jurors does not represent a fair cross-section of the community. There is no objection because the defense thinks, for whatever reason, that the likelihood of prevailing at trial with the particular prospective jurors that have been summoned may be greater than with a more representative selection. If the defense loses its gamble, and the defendant is convicted, the defense's deliberate tactical decision not to raise the issue at trial should bar its consideration on appeal.

If the perceived error is harmful to the defense, a defendant nonetheless might choose not to object simply to gain the proverbial "two bites at the apple." In other words, if the error could be asserted for first time on appeal, and a judgment of conviction reversed, the charges will have to be retried, and the defendant will have two opportunities for acquittal. Moreover, the defense may have reason to expect that the prosecution's evidence will be weaker because of the death of witnesses, fading of memories, or loss of physical evidence in a second trial after an appellate reversal.

For the reasons described above, petitioner was not entitled to raise on appeal any of the four claims at issue here. (See *People v. Lucas* (1995) 12 Cal.4th 415, 476–477 [48 Cal.Rptr.2d 525, 907 P.2d 373] [claim that prosecutor's charging decision violated the defendant's constitutional rights is forfeited because not raised at trial]; *People v. Howard* (1992) 1 Cal.4th 1132, 1159 [5 Cal.Rptr.2d 268, 824 P.2d 1315] [claim that minority group was underrepresented in the jury venire forfeited because not raised at trial].) Petitioner does not contend otherwise.

Petitioner argues, however, that because this is not an *appeal* but a *habeas corpus* proceeding, the forfeiture rule does not apply. He asserts that whether a claim can be raised in a habeas corpus proceeding depends on the nature of the claim, not on whether it was raised at trial. Citing *In re Harris* (1993) 5 Cal.4th 813, 834 [21 Cal.Rptr.2d 373, 855 P.2d 391] (*Harris*), he contends that even if not raised at trial, claims of constitutional error that are "clear and fundamental, and strike[] at the heart of the trial process" can be raised on habeas corpus.

In *Harris*, we first discussed the *Waltreus* rule (*In re Waltreus* (1965) 62 Cal.2d 218, 225 [42 Cal.Rptr. 9, 397 P.2d 1001]), which precludes a habeas corpus petitioner from raising a claim that was raised and rejected on appeal. We then discussed the *Dixon* rule (*In re Dixon* (1953) 41 Cal.2d 756, 759 [264 P.2d 513]), which bars a habeas corpus petitioner from raising a claim that was not, but should have been, raised on appeal. We held that neither rule bars a claim of constitutional error that is "clear and fundamental, and strikes at the heart of the trial process." (*Harris, supra*, 5 Cal.4th at p. 834.)

█ *Harris* does indeed allow a convicted defendant to file a habeas corpus petition raising claims of fundamental constitutional error even when those claims were previously rejected on *appeal*, or when the defendant did not, but should have, raised them *on appeal*. But *Harris* said nothing about allowing a defendant to raise such claims in a *habeas corpus* proceeding when no objection was made at *trial*. █ A criminal defendant, like any

other party to an action, may not sit on his or her rights. Thus, just as a defendant generally may not raise *on appeal* a claim not raised at trial (see p. 199, *ante*), a defendant should not be allowed to raise on *habeas corpus* an issue that could have been presented at trial. If a claim that was forfeited for appeal could nonetheless be raised in a habeas corpus proceeding, the main purpose of the forfeiture rule—to encourage prompt correction of trial errors and thereby avoid unnecessary retrials—would be defeated.

■ This does not mean, however, that there is no recourse when a defendant's rights are violated at trial and defense counsel does not object. If counsel's omission falls "below an objective standard of reasonableness . . . under prevailing professional norms" (*Strickland v. Washington* (1984) 466 U.S. 668, 687–688 [80 L.Ed.2d 674, 104 S.Ct. 2052]), the defendant may assert the error in a habeas corpus petition "clothed in 'ineffective assistance of counsel' raiment." (*Harris, supra*, 5 Cal.4th at p. 833.) The defendant would be entitled to habeas corpus relief if there is a "reasonable probability" (*Strickland v. Washington, supra*, 466 U.S. at p. 694) that defense counsel's incompetence in not objecting affected the trial's outcome.[3]

■ Nor is a defendant without recourse when crucial evidence establishing the violation does not come to light until after the trial. A defendant is under no duty to object at trial if the defendant does not know, and could not reasonably discover, the facts supporting the objection. If, for example, the prosecution fails to disclose to the defense any material exculpatory evidence (see *Brady v. Maryland* (1963) 373 U.S. 83 [10 L.Ed.2d 215, 83 S.Ct. 1194]), the defense may not learn of the undisclosed evidence until long after the trial has been completed. Therefore, when a claim depends substantially on facts that the defense was unaware of and could not reasonably have known at trial, a failure to object at trial will not bar consideration of the claim in a habeas corpus proceeding. We caution, however, that this exception applies only when the later discovered facts are essential to the claim. A habeas

---

[3] Justice Brown's concurring opinion asserts that barring claims for failure to object at trial is a "quintessential form-over-substance rule" because a petitioner can simply "recast" the barred claim as one of ineffective assistance of counsel. (Conc. opn., *post*, at p. 208.) A petitioner can always claim trial counsel was ineffective for not objecting. Doing so, however, does not "recast" the same claim. Unlike a claim of trial error, a claim of ineffective assistance of counsel based on a failure to object cannot succeed unless the petitioner shows that the failure to object fell "below an objective standard of reasonableness . . . under prevailing professional norms." (*Strickland v. Washington, supra*, 466 U.S. at pp. 687–688.) Attorneys often choose not to object for reasons that have no bearing on their competence as counsel. As this court said in an opinion by Justice Brown, "even when there was a basis for objection, ' "[w]hether to object to inadmissible evidence is a tactical decision," ' " and " ' "trial counsel's tactical decisions are accorded substantial deference . . . ." ' " (*People v. Majors* (1998) 18 Cal.4th 385, 403 [75 Cal.Rptr.2d 684, 956 P.2d 1137].)

corpus petitioner may not avoid this procedural bar by relying on facts that, although newly learned, add nothing of substance to what the defense knew or should have known at the time of trial. (See *In re Robbins* (1998) 18 Cal.4th 770, 814, fn. 34 [77 Cal.Rptr.2d 153, 959 P.2d 311].)[4]

We now apply these principles to each of the four claims at issue here.

## III

### A. *Claim II.A.*

Petitioner contends that his murder conviction, the jury's special circumstance findings, and his sentence of death should be vacated because the prosecutor's decision to seek the death penalty was motivated by petitioner's "race [African-American], and/or the publicity attending this case, and/or the lack of guidelines for such matters in the prosecutor's office, and/or the arbitrary practices of the prosecutors involved in making all decisions regarding Petitioner's case."

Petitioner cites statistics showing that in Riverside County during the years 1978–1990, African-Americans comprised only 5 percent of the population and were accused of committing only 18 percent of the homicides, but they received 80 percent of the death sentences. Petitioner presents documentary evidence that African-Americans were victims of racial segregation in Riverside County throughout the first half of the 20th century, and that Ku Klux

---

[4] For the sake of clarity, we explain why, in certain instances, our orders disposing of habeas corpus claims will not mention the petitioner's failure to raise the claim at trial.

When we reject a claim on direct appeal, and the defendant thereafter raises the same claim in a habeas corpus petition, we bar the claim because it was raised and rejected on appeal (*In re Waltreus, supra*, 62 Cal.2d at p. 225), thereby invoking the ground on which we rejected the claim on direct appeal. Thus, when an opinion of this court bars a claim on direct appeal because it was forfeited by the defendant's failure to object at trial, and we thereafter bar the identical claim in a habeas corpus petition because it was raised and rejected on appeal, we reaffirm our holding on direct appeal that the claim was forfeited. Accordingly, in such instances there is no need to *also* state, as a *separate* ground for rejecting the habeas corpus claim, that the defendant forfeited the claim by failing to raise it at trial, and our orders will not do so.

Our *Dixon* bar (*In re Dixon, supra*, 41 Cal.2d at p. 759) states that certain types of claims may not be raised on habeas corpus if they should have been, but were not, raised on appeal. When we determine that a claim in a habeas corpus petition is barred by *Dixon*, we do not, as a general rule, go on to decide whether the claim is also barred because the defendant did not object at trial. What we mean when we invoke the *Dixon* bar is that the claim is *based on the appellate record*, and thus was fully cognizable on appeal insofar as it was preserved at trial. Hence, we need not engage in the sometimes complex and time-consuming task of determining separately whether a claim was forfeited at trial by failure to object before concluding, under *Dixon*, that the proper means, if any, of obtaining review of the claim was by direct appeal.

Klan activities and instances of housing discrimination in the county persisted into the 1980's. In addition, petitioner asserts that a Hispanic prosecutor working in the Riverside District Attorney's office at the time of petitioner's capital trial complained of racial slurs by colleagues, and that an African-American investigator working in that same office a few years earlier had been given a "pen set" consisting of a watermelon with two pens stuck in it.[5]

In essence, claim II.A. consists of two separate allegations: (1) the prosecutor's decision to seek the death penalty in this case was based on a lack of guidelines in the district attorney's office, and (2) the prosecution's decision to seek the death penalty was based on petitioner's race. With regard to the first contention, petitioner does not allege that it is based on facts discovered after trial. At oral argument, he asserted that the prosecution suppressed evidence pertaining to this claim, but he alleged no facts in support. Thus, the issue could have been raised at trial, and petitioner's failure to do so bars its consideration in this habeas corpus proceeding. The second assertion, by contrast, is based on 1990 census figures, California Department of Justice statistics for the years 1978–1990, and information supplied by the American Civil Liberties Union in 1991. Petitioner's trial began in 1988 and ended in 1989, before these statistics were published. Although petitioner could probably have obtained at trial some of the statistics on which he now relies, we conclude that the claim depends substantially on facts that he was unaware of and could not reasonably have known at trial. Thus, this claim may be raised on habeas corpus. It is, however, without merit, as explained below.

As noted earlier, the primary evidence on which petitioner relies to support his claim that he was singled out for the death penalty because of his race consists of statistical evidence that between 1974 and 1990 African-Americans, although they were accused of committing only about 18 percent of the homicides, received 80 percent of the death penalties in Riverside County. But petitioner does not mention the percentage of African-Americans among the cases in which the prosecution *sought* the death penalty. Such a statistic would have greater bearing on determining racial bias in the prosecutor's *charging* decision: It is possible, for example, that only 18 percent of the cases in which the prosecutor sought the death penalty involved African-American defendants.

Moreover, even if petitioner had presented more pertinent statistics, such evidence, standing alone, would not establish a claim of racial bias in seeking the death penalty: A purely statistical showing that does not "describe or analyze the facts or circumstances of any case, other than the sentence and

---

[5] Petitioner claims these allegations are documented in exhibit 51 of his petition, but we find nothing in that exhibit substantiating these alleged facts.

race of [the] victim" (*People v. McPeters* (1990) 2 Cal.4th 1148, 1170 [9 Cal.Rptr.2d 834, 832 P.2d 146]) does not even entitle a defendant to obtain discovery of the district attorney's charging practices (*ibid.*; see also *McCleskey v. Kemp* (1987) 481 U.S. 279, 296 [95 L.Ed.2d 262, 107 S.Ct. 1756] [rejecting statistically based claim that a prosecutor's decision to seek the death penalty was racially motivated because "the policy considerations behind a prosecutor's traditionally 'wide discretion' suggest the impropriety of our requiring prosecutors to defend their decisions to seek death penalties, 'often years after they were made' "]); it therefore does not justify habeas corpus relief. Nor does evidence of a history of racial segregation in Riverside County and racial slurs by deputies in the Riverside County District Attorney's Office bolster petitioner's claim, for he offers no evidence that it was this background that influenced the decision to seek the death penalty against him or that the decision makers themselves uttered racial slurs.

In short, petitioner has not established a prima facie case that the prosecution's decision to seek the death penalty against him was based on his race.

█ Petitioner accuses his trial counsel of incompetence for not arguing at trial that the prosecutor's decision to seek the death penalty was based on a lack of guidelines in the district attorney's office. As we explained earlier (see *ante,* pp. 199–200), claims that trial counsel was incompetent are not procedurally barred by a petitioner's failure to raise them, so petitioner may now raise this claim. Nevertheless, it lacks merit. No statute or constitutional provision requires a district attorney to have guidelines on when to seek the death penalty. (See generally *People v. Lucas, supra,* 12 Cal.4th at p. 477.) Thus, had defense counsel raised at trial the issue of guidelines, the trial court likely would have denied the motion. Hence, counsel cannot be faulted for not making this argument.

B.   *Claim II.B.*

Petitioner asserts his death sentence should be vacated because the prosecutor's decision to seek the death penalty was based on his incorrect belief that petitioner had a prior conviction in Michigan for a crime described as "Assault Less than Murder." The information filed in superior court initially alleged this offense as a prior conviction. The prosecution later learned that the Michigan Supreme Court had reversed the conviction, and that on retrial petitioner was found not guilty. The jury at petitioner's trial never learned of the prior offense. Petitioner has submitted exhibits documenting his acquittal of that offense. He has also provided a declaration from his trial counsel stating that, after the preliminary hearing, the prosecutor who was initially assigned to petitioner's case mentioned the prior conviction as a reason for rejecting defense counsel's attempt to "plea bargain" the case.

All of these facts were known to petitioner at the time of trial. Thus, his failure to raise this claim at trial bars him from now raising it on habeas corpus.

Petitioner also accuses his trial counsel of incompetence for not raising this claim at trial. Although petitioner is not procedurally barred from asserting counsel's incompetence (see *ante*, pp. 199–200), he is not entitled to relief, as discussed below.

■ We know of no legal authority, and petitioner cites none, holding that a defendant's statutory or constitutional rights are violated when a prosecutor seeks the death penalty based on a good faith but mistaken belief that the defendant has a prior conviction. Of necessity, prosecutors must base their charging decisions on the information available to them. Occasionally, some of that information may turn out to be incorrect. So long as the inaccurate information does not form the basis for a jury's *imposition* of the death penalty, reliance on such information by the prosecutor in *seeking* the death penalty does not violate the defendant's statutory or constitutional rights. Therefore, trial counsel here cannot be faulted for not raising at trial the claim at issue.

## C.  *Claim II.C.*

Petitioner contends his death sentence should be vacated because the prosecutor's decision to seek the death penalty against him was improperly based on "financial and political considerations." In support, petitioner points to an advertisement by the Riverside County Deputy District Attorneys' Association in a local newspaper while his capital trial was pending. The advertisement sought public support in a contract dispute with the Riverside County Board of Supervisors, and it implied that the board's refusal to agree to the salary increase sought would undermine the prosecution of serious cases. Petitioner refers to a local newspaper story that was published shortly before his trial and discussed the salary dispute in detail. But the existence of the advertisement and the newspaper article was or should have been known to petitioner at the time of trial. Therefore, he may not now raise this claim on habeas corpus.

In an effort to support his claim of "political considerations," petitioner alleges that, after petitioner's trial, Dan Lough, the prosecutor in his case, touted his aggressive record in capital cases during Lough's campaign for the position of district attorney in nearby San Bernardino County. But petitioner has not alleged any specific statements that Prosecutor Lough made during the campaign. (See *In re Swain* (1949) 34 Cal.2d 300, 304 [209 P.2d 793] [a petitioner must "allege with particularity the facts upon which he would have

a final judgment overturned"].) And petitioner has not supported his vague allegations about Lough with any documentary evidence discovered by petitioner after his trial, such as copies of Lough's speeches touting his record or declarations from persons who heard the speeches. (See *People v. Duvall* (1995) 9 Cal.4th 464, 474 [37 Cal.Rptr.2d 259, 886 P.2d 1252] [petition should contain "reasonably available documentary evidence supporting the claim . . ."].) Thus, petitioner's allegations regarding posttrial events add nothing of substance to his claim, and so they do not preclude application of the general rule barring in habeas corpus proceedings claims of prosecutorial bias or misconduct that were not raised at trial.

Petitioner also faults his trial counsel for not presenting this claim of "financial and political" motivation by Prosecutor Lough and the attorneys in the prosecutor's office who were members of the Riverside County Deputy District Attorneys' Association. Although a claim of ineffective assistance of counsel may be asserted for the first time in a petition for writ of habeas corpus, petitioner's claim here is lacking in merit. Petitioner has not alleged that it was either Prosecutor Lough or the attorneys in the District Attorneys' Association who made the decision to seek the death penalty against him, and the decision may well have been made by the Riverside County District Attorney himself. Thus, petitioner has not alleged specific facts demonstrating that his trial counsel performed deficiently by not raising this issue at trial.

D.   *Claim V.A.*

Petitioner contends that we should vacate his murder conviction, the special circumstance findings, and his death sentence because Riverside County deliberately manipulated the racial composition of its panels of prospective jurors, thus resulting in a substantial underrepresentation of African-Americans and Hispanics on his panel.

Petitioner points out that 15 months before his trial began, a superior court ruled in *People v. Neidiffer & Cruz* (Super. Ct. Riverside County, 1987, No. CR-24472) that Riverside County's jury selection was unconstitutional because it systematically underrepresented Hispanics, young adults, and low-income residents. The court ordered substantial modifications to the county's jury selection process for that case. (See *People v. Jackson* (1996) 13 Cal.4th 1164, 1192–1193 [56 Cal.Rptr.2d 49, 920 P.2d 1254] [discussing the decision in *Neidiffer & Cruz*].) The court's ruling relied heavily on a study by Professor Edgar Butler of the University of California at Riverside.

Petitioner alleges that while his own jury was being selected, jury selection was taking place in another death penalty case (see *People v. Niles* (1991) 233 Cal.App.3d 315 [284 Cal.Rptr. 423] [affirming defendant Niles's murder

conviction]), in which the prosecution knew the defense had hired Dr. Butler to monitor the racial composition of the panel of prospective jurors. To ensure that the panel in *Niles* would be immune from constitutional challenge, petitioner alleges, jury officials manipulated the racial composition of jury panels so they could assign a large number of minority jurors to the *Niles* panel. As a result, petitioner asserts, minority jurors were *overrepresented* on the *Niles* panel and *underrepresented* on other panels, including his own, chosen at or near the same time.

Petitioner relies on a statistical analysis by Dr. Butler, who had also assisted the defense in *People v. Neidiffer & Cruz* and in *People v. Niles.* According to Dr. Butler, the *Niles* jury panel had a substantial *overrepresentation* of African-American and Hispanic prospective jurors. In petitioner's case, Dr. Butler found a substantial *underrepresentation* of African-American and Hispanic prospective jurors. Dr. Butler considered it "inconceivable that two jury panels selected from the same population at the same time by a random process would have such divergent proportions of minorities as did the *Niles* and *Seaton* panels . . . ."

All of the evidence on which petitioner relies was either known or could have been known by his attorney at the time of trial. Although petitioner notes that Dr. Butler did not prepare his study analyzing the two trials until after petitioner's trial was long over, nothing prevented petitioner from hiring Dr. Butler or some other expert to monitor the jury panel in his case as was done in the *Niles* case and to conduct at the time of trial the statistical analysis that Dr. Butler performed after the trial. Petitioner also asserts that Riverside County deliberately concealed its alleged manipulation of the jury pool from him, but he alleges no specific facts that, if true, would establish such concealment. Thus, petitioner's failure at trial to object to the jury panel precludes him from now raising this issue on habeas corpus.

Petitioner accuses his trial counsel of incompetence for not raising the claim in question at trial. His contention that counsel was incompetent is not procedurally barred (see *ante*, pp. 199–200), but it lacks merit, as discussed below.

Petitioner argues his attorney should have objected to the panel of prospective jurors on the ground that the manner in which it was selected violated his constitutional right to a jury composed of a fair cross-section of the community. Our first inquiry is whether counsel may have had a legitimate tactical basis for not objecting. Conceivably, because the *victim* in this case was African-American, as was petitioner, defense counsel might have been of the view that a panel of prospective jurors with a larger percentage of African-Americans would be *more* likely to convict defendant of murder and

impose the death sentence than the panel actually summoned. But we have a declaration from petitioner's trial attorney that he viewed the panel actually summoned as very *unfavorable* to petitioner, and that he did not "monitor" petitioner's jury panel for underrepresentation of minorities because his office was using *People v. Niles* as a basis for determining whether Riverside County's method of selecting prospective jurors was proper. Counsel's declaration suggests that he had no tactical reason for not objecting, and that his office decided to raise the issue in only one case, *Niles*, to conserve resources.

Nevertheless, petitioner has not shown that had his attorney objected to the composition of the panel of prospective jurors, the trial court would have sustained the objection. "In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." (*Duren v. Missouri* (1979) 439 U.S. 357, 364 [58 L.Ed.2d 579, 99 S.Ct. 664].) Assuming that petitioner's trial counsel could have satisfied the first two prongs of this test, petitioner has not alleged facts showing that counsel could have satisfied the third prong.

■ As we have said in a previous case: "A defendant does not discharge the burden of demonstrating that the underrepresentation [of a racial or ethnic group] was due to systematic exclusion merely by offering statistical evidence of a disparity. A defendant must show, in addition, that the disparity is the result of an improper feature of the jury selection process." (*People v. Burgener* (2003) 29 Cal.4th 833, 857 [129 Cal.Rptr.2d 747, 62 P.3d 1] (*Burgener*).) In *Burgener*, the defendant relied on a declaration by Dr. Butler, the same expert used by petitioner here, who stated that the statistical evidence of a disparity was so strong that there was " 'probably one chance in 10,000 that that would have happened by chance.' " (*Id.* at p. 858.) Nevertheless, we upheld the trial court's ruling that the defendant had failed to show that the disparity was the result of systematic exclusion.

Our holding in *Burgener, supra,* 29 Cal.4th at pages 857–858, is dispositive of petitioner's claim here that his trial counsel should have challenged the panel of prospective jurors. A successful challenge would have required evidence that the jury commissioner was deliberately removing minority jurors from other jury panels and placing them in the *Niles* jury panel; statistical evidence of a disparity would not have sufficed. Petitioner does not

allege facts demonstrating that his trial counsel could have presented the required evidence.

CONCLUSION

The order to show cause is discharged.

George, C. J., Baxter, J., Chin, J., and Moreno, J., concurred.

**WERDEGAR, J.,** Concurring.—I concur in the judgment. I see no need, however, to announce today that the newly created procedural bar will apply even to "claims of constitutional error that are 'clear and fundamental, and strike[] at the heart of the trial process.' " (Maj. opn., *ante*, at p. 199, quoting *In re Harris* (1993) 5 Cal.4th 813, 834 [21 Cal.Rptr.2d 373, 855 P.2d 391].) The majority does not assert that any of petitioner's claims meets that high standard. Indeed, as the majority explains, each of petitioner's claims ultimately lacks merit, either because he has failed to state a claim or because he has failed to show prejudice. Accordingly, I would postpone consideration of exceptions until presented with a conviction in which the new rule's application threatens a miscarriage of justice. (Cf. *Harris, supra,* at pp. 825–826, 831, 833–834.) To announce that a new rule will have no exceptions is far too easy when the facts of the case at hand do not offer a serious test of the rule's fairness and wisdom.

**BROWN, J.,** Concurring and Dissenting.—I have previously expressed my view that "creating a Byzantine system of procedural hurdles, each riddled with exceptions and fact-intensive qualifications, only undermines . . . the goals they purport to serve: integrity of judgments, finality, and comity." (*In re Gallego* (1998) 18 Cal.4th 825, 842 [77 Cal.Rptr.2d 132, 959 P.2d 290] (conc. & dis. opn. of Brown, J.); see also *In re Sanders* (1999) 21 Cal.4th 697, 730 [87 Cal.Rptr.2d 899, 981 P.2d 1038] (conc. & dis. opn. of Brown, J.).) Since, at least in the capital context, the court's internal practice generally ensures full merit review irrespective of procedural bars (see *Gallego,* at p. 852 (conc. & dis. opn. of Brown, J.)), consideration of possible defaults can only delay finality and invite disregard in the federal courts given the difficulty in determining whether we invoke them with sufficient regularity. (See *id.* at pp. 843–845 (conc. & dis. opn. of Brown, J.).)

In this instance, the majority goes one better, formulating a quintessential form-over-substance rule. As the majority perforce acknowledges, any failure to preserve an appealable issue by appropriate objection at trial can—and will—be raised on habeas corpus, recast as a claim of ineffective assistance of counsel. (Maj. opn., *ante,* at p. 200; see *People v. Mendoza Tello* (1997)

15 Cal.4th 264, 266–267 [62 Cal.Rptr.2d 437, 933 P.2d 1134]; *People v. Pope* (1979) 23 Cal.3d 412, 426 [152 Cal.Rptr. 732, 590 P.2d 859].) In such a circumstance, we better serve the purpose of the 'Great Writ' (see *In re Sanders, supra,* 21 Cal.4th at pp. 703–704; *In re Begerow* (1901) 133 Cal. 349, 353 [65 P. 828]) and the concern for promptly resolving these claims by "abandon[ing] the effort [to erect meaningless procedural impediments] in favor of the one certainty for ensuring expeditious review of capital habeas petitions: full merit review without regard to procedural bars. [Citation.]" (*In re Gallego, supra,* 18 Cal.4th 825, 851 (conc. & dis. opn. of Brown, J.).)

Expressing no opinion on the substantive merit of the majority's discussion of forfeiture and lack of objection at trial, I agree petitioner has failed to state a prima facie claim with respect to claims II.A., II.B., II.C., and V.A. and therefore would deny relief and discharge the order to show cause on that basis.

Petitioner's petition for a rehearing was denied September 29, 2004, and the opinion was modified to read as printed above. George, C. J., did not participate therein.