Filed 2/21/24  P. v. McLaughlin CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE, | 2d Crim. No. B324160 |
| Plaintiff and Respondent, | (Super. Ct. No. NA117856) |
| | (Los Angeles County) |
| v. | |
| JOHN DAVID McLAUGHLIN, | |
| Defendant and Appellant. | |

John David McLaughlin appeals his convictions by a jury on two counts of attempted robbery (Penal Code, §§ 664/211) [1] and one count of criminal threats (§ 422, subd. (a)).  The trial court found true that appellant had five prior convictions under the Three Strikes law.  (§§ 667, subds (b)-(i), 1170.12, subds. (a)-(d).)  It struck four of the convictions and sentenced him to eight years, eight months in prison.  Appellant contends the court erred by instructing the jury incorrectly on the issue of his mental fitness, and by failing to instruct the jury sua sponte on

---

[1] All unmarked statutory references are to the Penal Code.

the issues of unconsciousness and voluntary intoxication.  We will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant entered a bank in Marina del Rey on the morning of August 17, 2021.  He approached the teller's window and passed her a plastic bag with a note reading, "All bills in the bag now. . . .  Please and thanks."  He then told her to fill it with money.  No customers were present in the lobby, so the teller "stalled" by walking to an area behind the counter where appellant could not see her.  He left after a few minutes without incident.

Appellant boarded a bus to Long Beach, where he entered a second bank.  He passed the teller a plastic bag with a note reading, "Put all large bills in the bag thanks."  The teller pressed the alarm button and handed the note to her supervisor.  Appellant looked at them and said, "Do what I say, or you'll regret it."  The supervisor directed him to leave.  Appellant punched the teller window and walked out of the bank.  Police arrested him an hour later about a mile away.

Appellant represented himself at trial.  Both tellers identified him as the man who attempted to rob them.  The People also showed jurors bank surveillance images of a man who looked like appellant, with the same tattoos, wearing the same clothes and carrying the same plaid bag he had when he was arrested.  Testifying in his defense, appellant acknowledged he resembled the suspect but denied visiting either bank.  He described it as the "weirdest day of [his] life" and felt "everything's been kind of like gray" since his arrest.

The jury asked the court two questions while deliberating: "Are we able to take the defendant's mental fitness into account?

And, two, or request a professional to evaluate him?" The People recommended the court answer "no" to both questions because the jury heard no evidence about defendant's mental fitness at trial. The court agreed and asked appellant if he wished to be heard. Appellant responded, "I think my mental fitness – me personally, I think it's fine if the jury wants to know. They think that my – maybe it sounds like I might be mentally ill or something? Me personally, I don't think so." The court answered the two questions as follows: "No, the defendant's mental fitness is for the court to consider, not you. No, there is no professional mental health evaluation for you to consider. . . . Please do not speculate as to the defendant's mental fitness." Appellant did not object.

## DISCUSSION

### *Mental Fitness Instruction*

Appellant contends the trial court erred when it directed jurors not to consider his mental fitness while deliberating. This response to the jury's questions, he argues, "eliminated the intent requirement entirely or impermissibly handicapped the jury in its ability to find that appellant did not have the specific intent required for attempted robbery or criminal threats." (See *People v. Alvarez* (1996) 14 Cal.4th 155, 224 [larcenous intent to steal a required element of attempted robbery]; *Dziubla v. Piazza* (2020) 59 Cal.App.5th 140, 151, citing section 422 [criminal threats theory of illegality requires "a willful threat to commit a crime that would result in death or great bodily injury to another"].) The People argue appellant invited any error when he denied suffering from mental illness and posed no objection to the trial court's proposed answers. We agree. (*In re Seaton* (2004) 34 Cal.4th 193, 198; *People v. Boyette* (2002) 29 Cal.4th 381, 430.)

3

But we also find the court's response was proper and did not mislead the jury.  (*People v. Lucero* (2000) 23 Cal.4th 692, 723-724.)  The parties introduced no evidence at trial related to appellant's mental fitness at the time of the alleged crimes. Appellant never argued he lacked capacity to form the specific intent to rob the victims or to threaten them.  Instead, he denied entering the banks at all and described the charges against him as a case of mistaken identity.  The court need not have inferred the existence of such evidence from the jury's questions.  The court's answers directed the jury's attention to where it belonged—on the parties' evidence and the court's instructions. Among the instructions were those describing the intent element for each charged crime.  (See, e.g., CALCRIM Nos. 251 [Union of Act and Intent: Specific Intent], 460 [Attempt], 1600 [Robbery], 1300 [Criminal Threats].)  The jury could not have been misled in light of these instructions and the evidence.

*Voluntary Intoxication and Unconsciousness Instructions*

Appellant contends the trial court erred by not instructing the jury sua sponte on voluntary intoxication and unconsciousness.  He argues there was substantial evidence to support both defenses.  We again disagree.  The parties presented no evidence appellant committed the charged crimes while under the influence of drugs or alcohol.  All discussions about his past struggles with substance abuse were conducted outside the jury's presence.  When confronted with surveillance photos from the banks, appellant did not testify that he may have committed the crimes while unconscious or that he did not remember the incidents.  It would not have mattered if he had.  (See *People v. Rogers* (2006) 39 Cal.4th 826, 888 ["defendant's own testimony that he could not remember portions of the events, standing

4

alone, was insufficient to warrant an unconsciousness instruction"].)  He simply denied being the person in the photos. A trial court's duty to instruct the jury sua sponte did not extend to instructions "inconsistent with the defendant's theory of the case."  (*Id.* at p. 887.)

CONCLUSION

The judgment is affirmed.

NOT TO BE PUBLISHED.

CODY, J.

We concur:

YEGAN, Acting P. J.

BALTODANO, J.

James Otto, Judge
Superior Court County of Los Angeles
_____


Brad J. Poore, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Wyatt E. Bloomfield, Supervising Deputy Attorney General, Christopher G. Sanchez, Deputy Attorney General, for Plaintiff and Respondent.