Filed 6/21/24  P. v. Ortega CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G062165 |
| v. | (Super. Ct. No. 159577POF) |
| CARLOS IVAN ORTEGA, | ORDER MODIFYING OPINION; NO CHANGE IN JUDGMENT |
| Defendant and Appellant. | |

It is ordered that the opinion filed herein on June 18, 2024, be modified as follows:

On page 1, following the name "Marilee Marshall" add the following:

", under appointment by the Court of Appeal,"

1

This modification does not affect the judgment.


GOODING, J.

WE CONCUR:


O'LEARY, P. J.


MOORE, J.

Filed 6/18/24  P. v. Ortega CA4/3 (unmodified opinion)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a) J>rohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.llln(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G062165 |
| v. | (Super. Ct. No. 159577POF) |
| CARLOS IVAN ORTEGA, | OPINION |
| Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Patrick H. Donahue, Judge.  Affirmed.

Marilee Marshall for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa A. Mandel and Joseph C. Anagnos, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant Carlos Ivan Ortega filed a petition to vacate his first degree murder conviction and resentence him under Penal Code section 1172.6.[1] Transcripts of the original trial were not available, so the prosecution introduced a transcript of Ortega's sworn testimony before the parole board as evidence to controvert the allegations in Ortega's petition. Based on that testimony, the trial court found Ortega was a major participant in the underlying robbery who acted with reckless indifference to human life. It therefore denied the petition.

On appeal, Ortega argues the trial court's consideration of his parole board testimony was improper because the testimony was the equivalent of an involuntary confession. This challenge has been addressed and rejected by numerous California courts and we agree with their conclusions. Ortega also argues use of the parole board testimony violated the equal protection clause of the federal and state Constitutions. That argument was not made before the trial court and is forfeited. Finally, Ortega argues even if the parole board testimony could be considered, it is insufficient to support the court's finding that he was a major participant in the robbery and acted with reckless indifference to human life. (§ 189, subd. (e)(3).) We find substantial evidence supports the court's finding. The postjudgment order is affirmed.

## FACTS

The following facts are taken from the transcript of Ortega's hearing before the parole board, which formed the basis of the trial court's

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

ruling. In January 1988, Ortega got a telephone call from Mario,[2] one of Ortega's "crimies," who asked if he could borrow Ortega's gun. Ortega told Mario he had been arrested with his gun, so he no longer had it. Mario said he had a proposition for Ortega and wanted to meet to discuss it. They met at Ortega's apartment and Mario proposed they rob the home of Luis Ramon Martinez. Mario told Ortega there would be a lot of money and cocaine at the home. Ortega was "all in" to commit the robbery.

Mario recruited two other men, Andres and Julio, to help with the robbery. Julio wanted revenge on Martinez because Martinez had not paid Julio for his participation in an earlier robbery. Julio believed the money and drugs from that robbery were still at Martinez's house. The four men, Ortega, Mario, Andres, and Julio, met at Ortega's apartment the following week to plan the robbery. They agreed to commit the robbery on a certain date and time when they believed Martinez would not be at home, but three women would be present. They went to a nearby store to buy rope and duct[3] tape to restrain the women they anticipated would be at the home.

At some point, the scheduled date for the robbery was moved up based on the belief that Martinez's mother, one of the three women they anticipated would be in the home, would be leaving the country and might take the money with her. The new date was January 28, 1988.

On the morning of January 28, Ortega, Mario, Andres, Julio, and a fifth man named Jose went to Martinez's house in two vehicles. After some

---

[2] In some instances, first names are used because that is what appears in the parole board transcript. We intend no disrespect.

[3] At the parole board hearing, Ortega testified the men purchased masking tape. Other portions of the record indicate the men purchased duct tape, which they took to the robbery.

of the men confirmed Martinez was at a nearby gym, Ortega knocked on the door of the house. Ortega was wearing gray pants and a white shirt with a tie, and he was carrying a briefcase with a loaded gun inside. Martinez's mother came to the door, and Ortega told her he was selling some English courses Martinez wanted to see. When Martinez's mother said Martinez was not home, Ortega asked if he could wait inside. Martinez's mother unlocked the door and Ortega entered, followed by Mario and Jose.[4] Ortega pushed Martinez's mother aside, took the gun out of his briefcase, and said, "This is a robbery. We're not gonna hurt you-hurt nobody, all we want is the money and the drugs." Another woman in the house ran up the stairs, screaming there were thieves. Ortega and Mario followed her into a bedroom where Brenda, Martinez's girlfriend, was just waking up.

Ortega pointed the gun directly at Brenda's chest and told her "not to move or [he] would kill her." Ortega acknowledged at his parole hearing that he was prepared to kill Brenda at that moment. At Ortega's direction, Mario searched the dresser and found a gun inside. Mario took that gun and left to search the rest of the house. Ortega remained to search Brenda's room. He located approximately $1,200, which he took. Brenda asked Ortega to leave now that he had the money, but Ortega told her that was not the money he had come for. He continued to search the room and found a box with a lock on it. As he grabbed the box, Brenda jumped out of bed and begged Ortega not to touch it. She said the box was not hers; it belonged to someone else.

---

[4] The parole board transcript does not make clear where Andres and Julio were during the robbery. It appears they may have remained outside the home in one of the vehicles.

At that point, Mario came running back into the room saying Martinez had come home. Ortega could hear Martinez downstairs pounding on the door to the home. Mario and Ortega argued about who should go downstairs to handle Martinez. Ultimately, Mario and Jose left to go downstairs while Ortega stayed with Brenda. Within a minute, Ortega heard a gunshot and ran downstairs with his gun in his hand.

When Ortega got to the bottom of the stairs, Mario and Jose were not there, but Martinez was lying on the floor on his back with blood coming out of his mouth. Martinez had been shot. Ortega and Martinez locked eyes for several seconds, then Ortega heard Mario and Jose outside yelling for him to get into the truck. Ortega walked around Martinez and took off running. He went to the truck, but it was a stolen vehicle, and he could not find the screwdriver to start it, so he ran. The loaded gun was still in his hand, and he threw it in some nearby bushes. Martinez died of a gunshot wound to the head.

## PROCEDURAL HISTORY

Ortega was charged with the murder of Martinez (§ 187 (count 1)); first degree burglary of an inhabited dwelling (§§ 459, 460, subd. (a) (count 2)); first degree robbery of an inhabited dwelling(§§ 211, 212.5, subd. (a), 213, subd. (a)(l)(B) (count 3)); and first degree attempted robbery of an inhabited dwelling(§§ 664, 211, 212.5, subd. (a); 213, subd. (a)(l) (counts 4 & 5)). For all counts, it was alleged Ortega personally used a firearm during the commission of the charged crimes. (§ 12022.5, subd. (a).) Ortega was found guilty by a jury on counts 1, 2, and 3. The trial court dismissed counts

4 and 5 and the firearm enhancements and sentenced Ortega to 25 years to life in prison.

In January 2019, Ortega filed a petition to vacate his murder conviction under former section 1170.95.[5] The trial court initially denied the petition at the prima facie stage. On appeal, a different panel of this court reversed the trial court's order and remanded with directions to consider the merits of the petition. *(People v. Ortega* (Oct. 20, 2020, G058355) [nonpub. opn.].) On remand, the prosecution conceded Ortega had made a prima facie case, and the trial court issued an order to show cause why the murder conviction should not be vacated. On October 7, 2022, the court conducted an evidentiary hearing pursuant to section 1172.6, subdivision (d). No transcripts were available from Ortega's trial. The prosecution, however, offered a transcript of Ortega's August 9, 2018 hearing before the parole board.

On December 14, 2022, the trial court issued a ruling in which it found "[t]he People proved beyond a reasonable doubt that Mr. Ortega is ineligible for relief because he acted with reckless indifference to human life and was a major participant in the robbery." Ortega timely appealed.

DISCUSSION

Ortega argues the trial court's order denying his section 1172.6 petition should be reversed because testimony given before a parole board is unreliable and its use violates the equal protection clause of the federal and state Constitutions. Ortega also argues that even if the parole board

---

[5] Effective June 30, 2022, section 1170.95 was renumbered, without change in the text, as section 1172.6. (Stats. 2022, ch. 58, § 10.) For the sake of clarity, citations in this opinion are to the current version of the statute, section 1172.6.

transcript could be considered, the evidence is not sufficient to support the finding he was a major participant who acted with reckless indifference to human life. We disagree on both points.

## I.

### ADMISSIBILITY OF PAROLE BOARD TESTIMONY

Pursuant to section 1172.6, subdivision (d)(3), the prosecution may meet its burden in a section 1172.6 hearing by offering "new or additional evidence" beyond that given at prior hearings or trials. Because transcripts from Ortega's trial were not available, the prosecution offered as evidence the transcript from Ortega's parole board hearing. Ortega argues the testimony should not have been admitted because it is "akin to an involuntary confession." He acknowledges, however, that the argument has been repeatedly rejected by our appellate courts. (See *People v. Duran* (2022) 84 Cal.App.5th 920, 923-924; *People v. Myles* (2021) 69 Cal.App.5th 688, 697-706 *(Myles);* see also *People v. Mitchell* (2022) 81 Cal.App.5th 575, 586-590 *(Mitchell)* [following *Myles]; People v. Anderson* (2022) 78 Cal.App.5th 81, 84, 89-93 [following *Myles]).*

"A statement is involuntary if it is not the product of "'a rational intellect and free will."' [Citation.] The test for determining whether a confession is voluntary is whether the defendant's 'will was overborne at the time he confessed."' *(People v. Maury* (2003) 30 Cal.4th 342, 404.) Testimony before a parole board is not an involuntary confession and does not violate the Fifth Amendment prohibition against self-incrimination. As the appellate court explained in *Myles, supra,* 69 Cal.App.5th at page 706: The "defendant was not compelled to file a section [1172.6] petition, nor to testify at [his] parole hearing .... Indeed, as the trial court noted and defendant acknowledges, parole cannot be conditioned on admission of guilt to a certain

7

version of the crime. [Citations.] ... Having chosen to ... testify truthfully at the parole hearing, it is not fundamentally unfair to admit that information during a resentencing proceeding voluntarily initiated by defendant bearing on some of the same issues." *(Ibid.)* A parole hearing transcript is admissible in a section 1172.6 evidentiary hearing as new or additional evidence. *(Mitchell, supra,* 81 Cal.App.5th at p. 586.) For the reasons set forth in *Myles* and its progeny, we find no error in the trial court's consideration of Ortega's parole board testimony.

Ortega also argues the trial court's consideration of his parole board testimony violates the equal protection clauses of the state and federal Constitutions because use of such testimony unreasonably discriminates against those who are eligible for parole in favor of those who have been sentenced to life without possibility of parole. He acknowledges he did not raise this objection during the evidentiary hearing. The issue is thereby forfeited. "[A]s a general rule, 'the failure to object to errors committed at trial relieves the reviewing court of the obligation to consider those errors on appeal.' [Citations.] This applies to claims based on statutory violations, as well as claims based on violations of fundamental constitutional rights." *(In re Seaton* (2004) 34 Cal.4th 193, 198.) This is particularly true when the error relates to the admission of evidence. "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless: [if] (a) There appears of record an objection to or motion to exclude or to strike the evidence that was timely made and so stated as to *make clear the specific ground of the objection* or motion." (Evid. Code, § 353, subd. (a), italics added.)

8

## II.

### SUBSTANTIAL EVIDENCE

Finally, Ortega argues even if the parole board testimony could be considered, it is insufficient to support the trial court's finding that he was a major participant in the robbery and acted with reckless indifference to human life. "We review the trial court's findings for substantial evidence. [Citation.] [if] We view the facts in the light most favorable to the People. In this process, we presume in support of the judgment the existence of every fact that can be reasonably deduced from the evidence, whether direct or circumstantial. [Citations.] We must accept factual inferences in favor of the trial court's ruling." *(Mitchell, supra,* 81 Cal.App.5th at p. 591.)

Substantial evidence supports the trial court's findings as to both Ortega's role as a major participant in the robbery and his reckless indifference to human life. A major participant in a robbery is someone whose "personal involvement [is] substantial, greater than the actions of an ordinary aider and abettor. " *(People v. Banks* (2015) 61 Cal.4th 788, 802.) The determination is made on the totality of the circumstances. *(Ibid.)* Factors to be considered include the defendant's (1) role in planning the crime; (2) role in supplying or using lethal weapons; (3) awareness of the particular dangers created by the nature of the crime, the weapons used, or the other participants; (4) presence at the scene, including whether he could have facilitated or prevented the murder, and whether his actions played a role in the murder; and (5) actions after lethal force was used. *(Id.* at p. 803.)

Whether a defendant acted with reckless indifference to human life depends on whether the defendant was "'aware of and willingly involved in the violent manner in which the particular offense is committed' [and] consciously disregard[ed] 'the significant risk of death'" created by his

9

actions. *(In re Scoggins* (2020) 9 Cal.5th 667, 677.) ""'[T]he risk [of death] must be of such a nature and degree that ... its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation."'" *(Ibid.)* The factors for determining whether a defendant acted with reckless indifference to human life overlap with the major participant factors and include: (1) the defendant's knowledge a lethal weapon would be used in the felony; (2) the number of weapons used in the felony; (3) the defendant's physical presence at the crime; (4) the defendant's opportunity to act as a restraining influence or aid the victim(s); (5) how long the defendant interacted with the victim(s); (6) the defendant's knowledge of his or her confederate's propensity for violence; and (7) the defendant's efforts to minimize the risks of violence during the crime. *(People v. Clark* (2016) 63 Cal.4th 522, 618-623.)

The evidence here-including each of the individual factors and the totality of the circumstances-supports the trial court's finding that Ortega was a major participant in the robbery and that he acted with reckless indifference to human life. This was not a spur of the moment robbery. It was thoroughly planned, and Ortega was instrumental in the planning. He was present from the beginning to the end of the scheme. He planned the robbery for a time when Martinez would not be present, thereby demonstrating he understood the potential danger involved in robbing Martinez. He brought a gun to the robbery, hidden in a briefcase, and obtained entrance to the home through a deliberate ruse. Ortega expected there would be three women in the house at the time of the robbery, and he planned to restrain them with rope and duct tape purchased for that very purpose. During the robbery, he aimed his gun at one woman, threatened to kill her, and, according to his own sworn testimony, was prepared to do so.

Knowing Mario had a gun, Ortega sent him downstairs to handle Martinez, who was pounding on the door trying to get in. When Ortega came downstairs after hearing the gunshot, he saw Martinez on the floor with blood coming from his mouth. Instead of helping Martinez, he fled the scene. He threw his loaded gun into some bushes outside the house as he fled, creating extra risk.

In sum, by any measure, Ortega's personal involvement in the robbery was substantial. *(People v. Banks, supra,* 61 Cal.4th at p. 802.) He was "'aware of and willingly involved in the violent manner in which the particular offense [wa]s committed,' [and] consciously disregard[ed] the 'significant risk of death'" created by his actions. *(In re Scoggins, supra,* 9 Cal.5th at p. 677.)

Ortega points to the fact that he was only 19 at the time of the robbery and argues his youth is a relevant factor in the determination. In support, he cites *People v. Harris* (2021) 60 Cal.App.5th 939 *(Harris)* and *In re Moore* (2021) 68 Cal.App.5th 434 (Moore). Although youth may be a relevant consideration, the defendants in *Harris* and *Moore* presented very different circumstances than Ortega's. The defendants in those cases were minors. The *Harris* defendant was 17 years old at the time of the crime *(Harris, supra,* at p. 944), and the *Moore* defendant was only 16 *(Moore, supra,* at p. 439). Moreover, neither of them played any significant role in their respective crimes. The *Harris* defendant was described as having a "nonexistent" role in planning the crime, and the evidence of his participation in the crime was disputed. *(Harris, supra,* at p. 960.) The *Moore* defendant did not supply or use any weapon, and he had no control over his confederates. *(Moore, supra,* at pp. 452-543.) In contrast, Ortega was an adult and an active participant in both the planning and execution of the

11

crime. He used a weapon, threatened to kill Brenda (and was prepared to make good on that threat), sent his armed confederate downstairs to deal with Martinez, and then, after hearing the gunshot, walked around Martinez as he lay dying and fled, ditching his loaded gun in some bushes as he ran. "Youth can distort risk calculations. Yet every 18 year old understands bullet wounds require attention. The fact of youth cannot overwhelm all other factors." *(Mitchell, supra,* 81 Cal.App.5th at p. 595.) Even taking Ortega's youth into consideration, there is substantial evidence to support the trial court's finding Ortega was a major participant in the robbery who acted with reckless indifference to human life.

## DISPOSITION

The trial court's order denying Ortega's resentencing petition is affirmed.

GOODING, J.

WE CONCUR:

O'LEARY, P. J.

MOORE, J.

12