Filed 5/17/22  In re W.M. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re W.M. et al., Persons Coming Under the Juvenile Court Law. | B312328 (Los Angeles County Super. Ct. No. 21CCJP01141A–B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>S.C.,<br><br>        Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Marguerite D. Downing, Judge.  Affirmed.

Aida Aslanian, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, Aileen Wong, Deputy County Counsel, for Plaintiff and Respondent.

_____

## I.  INTRODUCTION

S.C. (mother) appeals from a juvenile court's order detaining her two children, W.M. (then 10-years old) and S.M. (then seven-years old), and the court's later exercise of jurisdiction over the children pursuant to Welfare and Institutions Code[1] section 300, subdivision (b)(1).  We affirm.

## II.  BACKGROUND

A.  *Dependency Petition*

On March 11, 2021, the Los Angeles County Department of Children and Family Services (Department) filed a dependency petition pursuant to section 300, subdivision (b)(1), which alleged:

"b-1  [¶]  The children['s] mother . . . and father . . . created a detrimental and endangering home environment for the children in that on 03/01/2021, law enforcement found a bag of marijuana, a gun magazine, and a box of ammunition within access of the children.  Such a detrimental and endangering home

_____

[1]     Further statutory references are to the Welfare and Institutions Code.

2

environment created by . . . mother and father endangers the children's physical health and safety and places the children at risk of serious physical harm, damage, danger and failure to protect."[2]

B.      *Referral and Detention Report*

On March 2, 2021, a neighbor called the police to report that during an altercation over a parking space, father threatened the neighbor with a gun. When police officers arrived at the scene, the neighbor explained that father, who was engaged in an ongoing dispute with the neighbor's family, had brandished a black gun, cocked the slide, and waved it in the air. The police went to the house identified by the neighbor as father's residence and called for father to come outside. Father complied and the police arrested him. Officers then conducted a sweep of the house and observed a loaded magazine on the living room sofa.

Mother and the children then arrived at the house and mother consented to a search of her home. Police officers found in her bedroom men's clothing, a box of ammunition, a large bag of marijuana, a wad of cash wrapped in rubber bands, and a gun scope. They found a second gun scope in the living room. Mother reported that father owned a gun and had complete access to the home. The police arrest report listed mother's home address as belonging to father.

A social worker visited the home on March 2, 2021. When she arrived, she observed father standing outside and mother sitting on the porch. When the social worker and mother went

---

[2]      Count b-2 concerned father only. Father does not appeal.

3

into the house, mother explained that she had asked paternal grandmother to watch her home while she was away for the weekend and guessed that the grandmother permitted father access to the home. As she spoke with mother, the social worker heard father arguing with someone outside. Mother responded by going outside and asking father to leave. Father told mother that his house key was in his jacket, which he had left inside the house earlier that morning. Mother retrieved the key from father's jacket and gave it to him. Father then left.

When the social worker told mother that the Department was concerned about the items that were found inside the home, mother explained that the marijuana in the bedroom belonged to father and observed that marijuana was legal. She stated that the money, which totaled approximately $50,000, belonged to her. Mother denied knowing that the magazine with live rounds was in the home but stated that she was positive that father did not bring any weapons into her home. She denied that father had been inside her home. Even when the social worker opined that father must have been in the home earlier that day because he had left his jacket inside, mother continued to deny it.

Mother explained that she was no longer in a romantic relationship with father. The two did not have a custody order but the children visited with father at paternal grandmother's home.

The social worker interviewed S.M., who said that there was a "'big problem yesterday.'" When asked for clarification, S.M. reported, "'They said [father] had a gun, but he didn't.'" Mother then interrupted the interview, saying that S.M. had schoolwork.

The social worker also interviewed W.M., who stated that father was threatened with a knife. According to W.M., father did not live at home, but he got "'his stuff from [t]here.'" W.M. explained that paternal grandmother would hand father items from mother's bedroom.

On March 8, 2021, the social worker interviewed father. Regarding the March 1, 2021, incident, father stated he was outside the home when he had a confrontation with five men, one of whom pulled out a dagger. Father admitted to being inside the home the night prior to March 1, 2021, and admitted that the gun magazine belonged to him. Father denied that mother knew the gun magazine was in the home. Father stated that the marijuana belonged to him. According to father, he did not have a permanent residence and lived with paternal grandparents.

A search of father's criminal history indicated arrests from 1990 to 2008 for burglary, robbery, petty theft, grand theft of a vehicle, taking a vehicle without the owner's consent, receiving known stolen property, grand theft of money, driving with a suspended license, and battery on a peace officer.[3]

C.    *Detention Hearing*

At the March 16, 2021, detention hearing, the juvenile court found there was a prima facie case that the children were persons described under section 300 and ordered them detained from mother. The children were placed with an adult sibling.

---

[3]    The record on appeal does not elaborate on whether father was convicted of any of these arrests. It does, however, indicate that father has a firearms restriction as a convicted felon, which necessarily indicates he has sustained a felony conviction.

D.    *Jurisdiction/Disposition Report*

On April 6, 2021, a dependency investigator interviewed S.M.  The child reported that mother locked her room when she was not home but that the door was unlocked when mother was home.  The child would go into mother's room to get candy from a drawer.

Mother told the investigator that the drawer that contained candy was not the same drawer in which the ammunition had been found.  Mother repeated that she did not know anything about the gun magazine or bullets because "'none of that is usually in my home.'"  As to the marijuana in her bedroom, mother explained that the bag of marijuana was "'small,'" her room had been locked, and the "'kids barely come into my room.'"  Mother denied father lived with her and asserted that he never had keys to the home.  When asked why father was at her home on the day after his arrest, mother stated that father returned to get his car and keys.  Mother denied father was aggressive and claimed she had never seen him with a gun.  According to mother, father found the gun magazine in a car that he had purchased.

Paternal grandmother reported to the investigator that father lived with her and was having trouble with mother's neighbors because they liked to steal.  She denied that father owned a gun.  When asked how often father went to mother's home, paternal grandmother responded every other day.  Paternal grandmother did not know if father spent the night at mother's home.

E.      *Other Reports*

In a last minute information to the court filed on
April 20, 2021, the investigator reported that father denied living
with mother.  Father admitted that the magazine, gun scopes,
and marijuana belonged to him.  He denied having a gun and
claimed that he had found the weapon-related items inside a car
that he had purchased.

The investigator conducted a walkthrough of mother's
home and did not see father's belongings there.  Mother had
changed the locks and restricted father and paternal
grandmother's access to her home.  Mother visited the children
daily.

A second last minute information to the court included
character reference letters for mother.

F.      *Jurisdiction/Disposition Hearing*

At an April 23, 2021, adjudication hearing, the juvenile
court admitted as evidence the Department's reports.  The court
then made reference to a document, "Mother's A."[4]  The court
addressed mother's counsel and stated, "So I do not know what
you want to do, if you just want to do the Department's last
minute, which is the letter and not the attachments, but it's

---

[4]      It is not entirely clear whether "Mother's A" included the
same character references that were included in the
Department's second last minute report.  The court asked
mother's counsel, "[I]s your Mother's A the Department's Last
Minute?"  Mother's counsel responded:  "No.  [¶]  There were two
last minutes filed for today, Your Honor.  [¶]  It would be the
second last minute."

7

really hard for me when someone tells me somebody is a wonderful person. [¶] I do not know that person, to know what wonderful means. [¶] So I am not going to accept Mother's A." Mother did not argue that the court should accept Mother's A or discuss the matter again during the hearing. Instead, after arguing that the court should not sustain the count as to mother's conduct and requesting that the court terminate jurisdiction and return the children to mother's custody, mother's counsel submitted on this matter.

Following argument, the juvenile court declared both children to be dependents pursuant to section 300, subdivision (b)(1), and sustained the petition as alleged. The court found that "mother was not cooperative" and deemed many of her statements to be not credible. The court then proceeded to consider disposition and ordered that the children be returned to mother's physical custody.

After the juvenile court made its jurisdictional findings and dispositional order, mother's counsel stated that mother wanted to clarify that father did not have her home address on his driver's license. Mother then asked if she could be sworn in and testify about the matter. The court rejected mother's request, noting that both law enforcement and the Department had indicated to the contrary and the address on his license was "not the only issue."

# III.  DISCUSSION

A.    *Challenge to Detention Order is Moot*

Mother contends that the juvenile court prejudicially erred when it ordered her children detained at the detention hearing. A detention order "is a temporary order that lasts only until the placement decision is made in a dispositional order" (*In re Sabrina H.* (2007) 149 Cal.App.4th 1403, 1414, fn. omitted); and, here, the later dispositional order returning the children to mother renders mother's challenge to the initial detention order moot.  (*In re Anna S.* (2010) 180 Cal.App.4th 1489, 1498; *In re Sabrina H., supra*, 149 Cal.App.4th at p. 1414.)  We therefore do not consider mother's argument.

B.    *Substantial Evidence Supports the Jurisdictional Findings*

Mother next contends that there was insufficient evidence to support the court's sustaining of count b-1.  On this record, which demonstrates that mother is a foster parent and a sustained finding of jurisdiction would impact her ability to continue to foster children or adopt them, we exercise our discretion to consider the merits of mother's challenge even though father does not challenge the court's exercise of jurisdiction based on his conduct.  (*In re J.C.* (2014) 233 Cal.App.4th 1, 4.)

"'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them.  "In making this determination, we draw all

reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court.""" (*In re I.J.* (2013) 56 Cal.4th 766, 773; accord, *In re R.T.* (2017) 3 Cal.5th 622, 633.)

Substantial evidence supports the juvenile court's finding that mother failed adequately to protect the children from father's dangerous behavior. Father had a criminal history that included at least one felony conviction. Mother knew that he owned a gun and used marijuana yet allowed him unfettered access to her home, which resulted in his leaving behind a loaded magazine, a box of ammunition, a bag of marijuana, and two gun scopes. Even though mother argued that the children did not have access to her bedroom, where most—but not all—of the items were found, S.M. reported entering the room to acquire candy. (See *In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1651 ["leaving drug paraphernalia within [the child's] reach, indicated a gross lack of attention to the child's welfare"].) Further, and contrary to mother's argument, this was not a one-time incident that did not pose a substantial risk of serious harm. Paternal grandmother reported that father went to mother's home every other day. Father was engaged in an ongoing dispute with the neighbors and he owned a gun.

We also reject mother's argument that there was insufficient evidence that the children were at substantial risk of harm because by the time of the jurisdictional hearing, mother

10

had denied father access to the home by changing the locks. "A parent's '"[p]ast conduct may be probative of current conditions" if there is reason to believe that the conduct will continue.'" (*In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1383–1384.) Mother repeatedly maintained that she had not given father access to her home, despite overwhelming evidence to the contrary. "'[D]enial is a factor often relevant to determining whether persons are likely to modify their behavior in the future without court supervision.'" (*In re A.F.* (2016) 3 Cal.App.5th 283, 293.) Moreover, mother minimized the threat posed by the bag of marijuana in her bedroom, disputing the amount, commenting that it was legal, and falsely asserting that the children did not have access to her bedroom. That she did not recognize the risk of having marijuana within easy reach of the children suggested that she would continue to expose her children to such risk in the future.

We also reject mother's contention that there was insufficient evidence to support the allegations against father. There was ample evidence that father placed the children at risk of serious harm by leaving a magazine with live rounds, ammunition, and marijuana in the home. Accordingly, substantial evidence supports the juvenile court's jurisdictional findings.

C.    *Other Matters*

Mother additionally maintains that the juvenile court denied her due process when it refused to allow her to testify about the purported errors in the record that suggested father lived in her home. "'In juvenile dependency litigation, due

11

process focuses on the right to notice and the right to be heard.'" (*J.H. v. Superior Court* (2018) 20 Cal.App.5th 530, 536–537.) Mother only requested to testify *after* the court had made its jurisdictional findings and dispositional order.  Mother had the opportunity to testify before the court made its findings but failed to do so.  We find no due process violation.

Mother also contends that the juvenile court abused its discretion by not admitting into evidence certain character reference letters.  Mother, however, did not object when the court indicated that it would not admit the letters or make any argument as to why the letters were either relevant or admissible.  Accordingly, she has forfeited her challenge to the evidentiary ruling on appeal.  (See *In re Seaton* (2004) 34 Cal.4th 193, 198.)

## IV.  DISPOSITION

The jurisdictional findings and dispositional order are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM, J.

We concur:

RUBIN, P. J.

BAKER, J.